**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERARIN JAHJA, Petitioner, v. ERNESTO SANTACRUZ JR., et al., Respondents. | Case No. 8:26-cv-03209-MBK<br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Verarin Jahja, a native and citizen of Indonesia, is currently subject to GPS monitoring and an Order of Supervision ("OSUP"), both issued by the Department of Homeland Security ("DHS"). Ms. Jahja filed her first petition for writ of habeas corpus on January 20, 2026, concurrently with an application for a temporary restraining order ("TRO"). The District Court granted the TRO and ordered the government to immediately release Ms. Jahja from custody. The government did so, but subject to an ankle GPS

monitor and an extensive OSUP. Ms. Jahja later filed a request for voluntary dismissal, which the District Court granted on March 17, 2026.

On October 30, 2026, Ms. Jahja filed the instant Petition, seeking removal of the ankle monitor, release from the OSUP, and an injunction preventing Respondents from imposing similar restraints on her in the future. As of the date of this order, Respondents have not filed an opposition or otherwise appeared in this case. For the reasons that follow, the petition for writ of habeas corpus is granted.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Verarin Jahja is a native and citizen of Indonesia. Dkt. 1 at 8. Both her spouse and her son are United States citizens, and she has resided in the United States since 2004. *Id.* at 2, 8. On September 2, 2022, Petitioner's son filed a Form I-130 (Petition for Alien Relative) with the United States Citizenship and Immigration Services ("USCIS") on her behalf. *Id.* at 28. USCIS issued an Approval Notice on July 27, 2023. *Id.* Petitioner is currently awaiting adjudication of her Lawful Permanent Resident ("LPR") status at a hearing on March 5, 2027. *Id.* at 30.

Petitioner filed her first habeas petition on January 20, 2026, concurrently with a TRO application. *See Verarin Jahja v. Ernesto Santacruz Jr., et al.*, No. 5:26-cv-00235-KK-MBK (C.D. Cal.) (hereinafter "*Jahja I*"). On or about December 5, 2025, Respondents detained Petitioner on grounds of a July 2008 removal order issued against her. *Jahja I*, Dkt. 1 at 2. However, this was after Petitioner had already been approved for apply for LPR status and after Petitioner had filed a motion to re-open and terminate her removal proceedings. *Id.*

The District Court ordered Respondents to respond to the TRO application. *Jahja I*, Dkt. 7. Respondents filed a response stating they "do not have an opposition argument to present." *Jahja I*, Dkt. 9 at 2. On January 26, 2026, the District Court granted the TRO and ordered Respondents "to immediately release Petitioner from their custody." *Jahja I*, Dkt. 10 at 6. Respondents subsequently reported they had released Petitioner on or about January 27, 2026. *Jahja I*, Dkt. 12 at 2.

A month later, on February 23, 2026, Respondents filed an answer to the original Petition, requesting that it be dismissed or denied as moot. *Jahja I*, Dkt. 13. In a supplemental answer filed the same day, Respondents argued "Petitioner's challenge to the conditions of her release—however framed—fails." *Jahja I*, Dkt. 14 at 2, n. 1. Petitioner filed a reply contesting Respondents' mootness arguments on February 24, 2026. *Jahja I*, Dkt. 16.

On March 16, 2026, Petitioner filed a request for voluntary dismissal. *Jahja I*, Dkt. 17. Petitioner noted that her motion to re-open her removal proceedings was granted and she was now awaiting a hearing on her LPR application, thus mooting the Petition. *Id.* The District Court granted the request and dismissed the action on March 17, 2026. *Jahja I*, Dkt. 18.

On October 23, 2026, Petitioner filed a motion to enforce the judgment. *Jahja I*, Dkt. 19. She requested the District Court order Respondents "to (i) remove the GPS ankle monitor placed on Petitioner upon release; (ii) vacate the geographic movement restrictions imposed by ICE; and (iii) terminate the extensive Order of Supervision conditions imposed without this Court's authorization." *Id.* at 2. However, on October 27, 2026, the District Court denied the motion on grounds that the case had already terminated upon Petitioner's voluntary dismissal. *Jahja I*, Dkt. 20. The District Court indicated Petitioner could raise new issues in a new petition. *Id.*

Petitioner filed the instant Petition on October 30, 2026. Dkt. 1. She argues her release from detention led to a "new form of custody" in that Respondents subjected her to GPS tracking, movement restrictions, and other extensive restrictions on her liberty and daily life. *Id.* at 2. Petitioner alleges Immigration and Customs Enforcement ("ICE") forcibly enrolled her into the Intensive Supervision Appearance Program ("ISAP") despite her being approved to apply for LPR status and her complete lack of criminal record. *Id.* at 11. Petitioner's ISAP conditions require her to comply with office visits, case management, court tracking, and home visits. *Id.* at 11-13. Petitioner additionally alleges it is the official blanket policy of ICE to monitor noncitizens with GPS tracking ankle monitors "whenever possible" and with "increased reporting requirements." *Id.* at 10-11.

The ankle monitor imposes severe burdens on Petitioner, including physical harm. *Id.* at 11, 86. It requires battery charging for 2-3 hours daily before Petitioner goes to sleep, as it will beep at night if it needs to be charged. *Id.* at 12. It sometimes emits messages that require the wearer to tap it twice—a visible and audible action that indicates to onlookers and bystanders that the wearer is being monitored. *Id.* at 12-13. It can sometimes falsely alert to tampering simply by the wearer performing excessive movement. *Id.* at 12. It is physically hot and uncomfortable on the wearer's skin and can cause bruising. *Id.* at 13, 86. It requires the wearer to carry a heavy and bulky charger everywhere she goes, just in case the battery runs low while she is out. *Id.* at 13. Petitioner has expressed embarrassment and fear of being discriminated against if people see the monitor while she is in public. *Id.* Petitioner lives in constant fear that the ankle monitor or its reporting functions will malfunction and falsely suggest a violation of her ISAP. *Id.* at 13-14.

Petitioner argues: (1) Respondents' imposition of electronic surveillance serves no legitimate nonpunitive objective in violation of substantive due process; (2) the surveillance was imposed unilaterally by ICE without court authorization in violation of procedural due process; (3) the surveillance is arbitrary and capricious in violation of the Administrative Procedure Act ("APA"); and (4) the surveillance exceeds statutory authority in violation of the APA. *Id.* at 14-19. Petitioner requests the Court order Respondents to immediately release Petitioner from her ankle monitor and from "the extensive ISAP monitoring that was not authorized by any judge." *Id.* at 19. As of the date of this order, Respondents have not filed an opposition or otherwise appeared in this case.

## II. DISCUSSION

Petitioner argues that, *inter alia*, her electronic surveillance and extensive ISAP conditions violate due process because they serve no legitimate purpose and were imposed pursuant to a blanket government policy. Petitioner lacks any criminal history and the record does not show any finding of danger or flight risk. Petitioner is also currently approved for LPR status pending an upcoming USCIS hearing. Respondents have failed to oppose Petitioner's claims or otherwise appear in this case.

"The Court has been told that the United States Attorney's Office is adopting a practice and policy of making no appearance—and filing no answer, even one that contains a non-opposition statement—if Respondents have no intent to oppose a given immigration habeas petition after it has screened the petition on the merits." *Carrillo v. Mullin*, No. 5:26-cv-05229-SK, 2026 WL 2815883, at *1 (C.D. Cal. Sept. 18, 2026). Respondents' failure to enter an appearance or oppose the Petition is a concession. *See Rojas v.*

*Mullin*, No. 26-cv-1437-FMO-MAA, 2026 WL 1105039, at *1 (C.D. Cal. Apr. 17, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession"); *Khoury v. Noem*, No. 5:26-cv-00113-SRM-MBK, 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026) (granting TRO requiring the petitioner's release where "the Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim"); *E-M- v. Hermosillo*, No. 3:25-cv-1083-SI, 2026 WL 883776, at *1 (D. Or. Mar. 31, 2026) ("Respondents do not challenge Count Three on the merits and thus the Court finds that Respondents have waived any such challenge and conceded those aspects of Count Three of the Petition"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims").

In light of Respondents' non-opposition, the Court finds that Petitioner has shown her electronic surveillance and extensive ISAP conditions violate due process. The Supreme Court has long recognized that due process requires that immigration detention[1] bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690-92. Here, Petitioner holds an approved

[1] The writ of habeas corpus is not limited exclusively to release from physical detention. *See Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973). Habeas remains an available remedy for those subject to "severe" restraints on liberty "not shared by the public generally." *Id.* (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). Here, Petitioner's GPS monitoring and ISAP conditions are severe restraints not generally shared by the public.

petition to apply for LPR status and nothing in the record indicates she has been found to be a danger to the community. Accordingly, the Court concludes Petitioner's electronic surveillance and extensive ISAP conditions do not serve a permissible non-punitive purpose under the immigration laws and thus violate due process.[2]

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner Verarin Jahja (A# 095-684-779) from her GPS ankle monitor and other means of electronic surveillance, and return her to the status and liberty conditions she enjoyed before her arrest and detention on December 5, 2025; (3) Respondents are enjoined from re-detaining or imposing electronic surveillance and additional supervision requirements on Petitioner in the future without a hearing before a neutral decisionmaker where the Government shows such additional restraints are warranted; and (4) Respondents shall file a status report within seven (7) days to confirm compliance with this order.

Dated: November 9, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

[2] Because the Court finds Petitioner is entitled to relief on due process grounds, it declines to address Petitioner's remaining claims.